IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JASON K BRINK                                                                                           PLAINTIFF

v.                                                             CIVIL ACTION NO. 1:18-cv-65-LG-MTP

COMMISSIONER OF SOCIAL SECURITY                          DEFENDANT

**REPORT AND RECOMMENDATION**

     Plaintiff Jason K. Brink brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security Administration denying his claims for disability insurance benefits and supplemental security income. Having reviewed the parties' submissions, the record, and the applicable law, the undersigned recommends that the Commissioner's final decision be AFFIRMED and that this action be DISMISSED.

**PROCEDURAL HISTORY**

     On April 21, 2014, Plaintiff applied for disability insurance benefits, and on January 7, 2016, he also applied for supplemental security income. (Administrative Record [6] at 192-96; 212-18). Plaintiff was thirty-five (35) years old when he applied for disability insurance benefits, and he has past work experience as an electrician, master electrician, and construction superintendent. ([6] at 192, 235). Plaintiff alleged that he had been disabled since December 21, 2012, due to degenerative disc disease, spinal stenosis, radiculopathy in left arm and left shoulder, spinal fusion in neck, pinched nerve in neck, nerve damage in neck and back, osteoarthritis in knees and back, and anxiety. ([6] at 247). After the agency denied Plaintiff's claims, an Administrative Law Judge ("ALJ") held a hearing on November 30, 2016. ([6] at 33-73).

During the hearing, Plaintiff confirmed that he had been "working to a large extent" after December 21, 2012, the alleged disability onset date. ([6] at 56-57). Thus, after the hearing, Plaintiff amended his alleged disability onset date from December 21, 2012 to August 8, 2015. ([6] at 299). On March 6, 2017, the ALJ issued a decision finding that Plaintiff was not disabled. ([6] at 18-28).

Plaintiff appealed the ALJ's decision, and on December 21, 2017, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner ([6] at 4-6). Plaintiff now seeks judicial review in this Court under 42 U.S.C. § 405(g).

## ADMINISTRATIVE LAW JUDGE'S DECISION

In his March 6, 2017, decision, the ALJ applied the five-step sequential analysis set forth in 20 C.F.R. § 404.1520(b)-(f)[1] and determined that Plaintiff was not disabled. At step one, the ALJ noted that Plaintiff worked after his alleged disability onset date—August 8, 2015—but found that his work activity did not rise to the level of substantial gainful activity. At step two,

---

[1] This analysis requires the ALJ to make the following determinations:
  (1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);
  (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
  (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);
  (4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
  (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).
See 20 C.F.R. §§ 404.1520, 416.92. The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical spine, status post anterior fusion, and bipolar disorder." At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. ([6] at 20-21).

The ALJ then examined the record and determined that Plaintiff had the residual functional capacity ("RFC")[2] to "perform medium work as defined in 20 C.F.R 404.1567(c) and 416.967(c)[3] with the following additional limitations: can occasionally climb ladders, ropes, ramps, stairs, and scaffolds; must have low stress job environment, involving only occasional decision making, no production or pace work, and only occasional interaction with supervisor, coworkers and the general public." ([6] at 22-26). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, however, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. Accordingly, the ALJ found that Plaintiff was not disabled. ([6] at 26-28).

## APPEALS COUNCIL'S DECISION

Plaintiff appealed the ALJ's decision and submitted additional evidence to the Appeals Council. Specifically, Plaintiff submitted medical records from August 8, 2015, through April

---

[2] "Residual Functional Capacity" is defined as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1).

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c); 416.967(c).

3

21, 2016. ([6] at 98-138).[4]  The Appeals Council found that the evidence did "not show a reasonable probability that it would change the outcome of the decision" and denied Plaintiff's request for review. ([6] at 4-6).

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983).  To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established." *Id*. (citations omitted).

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (internal citations and quotations omitted).  Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).  If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617.  Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial

---

[4] As addressed below, Plaintiff asserts that he attempted to submit these medical records to the ALJ after the hearing.  Plaintiff argues that the ALJ erred by not making these medical records a part of the record.

rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

## ANALYSIS

Plaintiff raises four issues for review:

1. Whether the ALJ failed to comply with HALLEX[5] and ensure that all relevant evidence was entered into the record, and Appeals Council erred in denying review.

2. Whether the residual functional capacity . . . is supported by substantial evidence.

3. Whether the ALJ erred in the analysis required by SSR 16-3p.

4. Whether the ALJ improperly made an inference that stabilization correlates to the ability to work on a sustained basis.

([10] at 6).

### *Issue 1: Whether the ALJ Failed to Comply with HALLEX and Ensure that All Relevant Evidence was Entered into the Record, and Appeals Council Erred in Denying Review*

During the hearing before the ALJ, Plaintiff requested that the ALJ allow him to submit additional evidence following the hearing. Plaintiff submitted, and the ALJ considered, medical records from August 8, 2015 to May 9, 2016 (Exhibit 4F), medical records from May 25, 2016 to June 8, 2016 (Exhibit 5F), and medical records from October 7, 2016 to November 22, 2016 (Exhibit 6F). Plaintiff asserts that he attempted to submit additional medical records from August 8, 2015 to April 21, 2016 ([6] at 98-138), which were not considered by the ALJ.

In his decision, the ALJ references the additional evidence submitted by Plaintiff. The ALJ explained:

---

[5] HALLEX refers to the Social Security Administration's "Hearing, Appeals and Litigation Law Manual."

> Lastly, the undersigned also allowed [Brink's] attorney time after the hearing to submit additional evidence, at her request. These records were received and considered. Exhibits 4F; 5F; 6F. She also submitted a post-hearing memorandum, which references some possible evidence that the attorney may have failed to submit. Exhibit 15E.

([6] at 25). Plaintiff argues that the ALJ erred by not securing all the medical records prior to rendering a decision.

An ALJ has a duty "to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). This duty, however, can reasonably require only so much. "It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). "It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004).

Importantly, courts should not reverse the decision of an ALJ for failure to develop the record unless the claimant shows that he was prejudiced by such failure. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). "To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result." *Id*. (internal quotations and citation omitted). As previously mentioned, the Appeals Council found that the additional medical records did "not show a reasonable probability that it would change the outcome of the decision." ([6] at 443). Plaintiff claims that the Appeals Council erred by not remanding the case based on the new evidence.

Similar to a court's review of whether an ALJ failed to properly develop the record, a court's review of the Appeals Council's treatment of new evidence must include a consideration of the effect new evidence would have had on the ALJ's decision. If new evidence is presented

6

to the Appeals Council, a court will review the record as a whole, including the additional evidence, to determine whether the Commissioner's findings are supported by substantial evidence. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005); *see also Jones v. Astrue*, 228 Fed. App'x 403, 406-07 (5th Cir. 2007) (cautioning against remanding cases based on new evidence presented to the Appeals Council without meaningful regard for the substantial evidence standard). A court should remand based on new evidence only if the new evidence is so inconsistent with the ALJ's finding that it undermines the ultimate disability determination. *Higginbotham v. Barnhart*, 163 Fed. App'x 279, 281-82 (5th Cir. 2006).

After considering the evidence before him, including medical records, the ALJ acknowledged that some of Plaintiff's records indicate that he suffered from bipolar disorder with occasional psychotic features. The ALJ noted that the medical records reference "a few short inpatient hospitalizations." ([6] at 24). The ALJ, however, also noted that the records show substance abuse and non-compliance with medications and treatment. The ALJ found that the records demonstrate that Plaintiff's symptoms were more severe when he was abusing illicit drugs and non-compliant with his medications and treatment. ([6] at 24).

The medical records before the ALJ support his conclusion. On March 25, 2014, a doctor informed Plaintiff that he would no longer receive treatment from Premier Choice Medical Clinic because Plaintiff was abusing his prescription drugs and injecting them intravenously. ([6] at 328-29). The records demonstrate that Plaintiff received treatment in emergency rooms for anxiety/depression and suicidal ideations on August 8, 2015; November 12, 2015; April 12, 2016; and May 10, 2016. ([6] at 367-69, 381-83, 392-93, 405). During treatment, Plaintiff tested positive for amphetamine and marijuana multiple times. ([6] at 390, 415). His physician specifically stated that Plaintiff's symptoms are aggravated by his drug use. ([6] at 381-83).

7

Medical professionals noted Plaintiff's history of non-compliance with medications. ([6] at 403). On May 10, 2016, his physician noted that Plaintiff had been off all his medications and was experiencing depression, bipolar disorder, an acute psychotic break, and drug withdrawals. ([6] at 367-69).

The ALJ also reviewed medical records from Plaintiff's hospitalization at the South Mississippi State Hospital from May 25, 2016, to June 8, 2016. Plaintiff was diagnosed with bipolar disorder mixed with psychotic features, severe marijuana use disorder, and moderate opioid use disorder. ([6] at 416). Plaintiff's physician noted that he was "entitled and exploitive with no empathy." ([6] at 416). In the discharge summary, Plaintiff's physician stated as follows: "The prognosis of this patient is fair if he continues his medications as prescribed and follows up with outpatient treatment as recommended as well as avoids any substance abuse. It is to be noted that the patient has been noncompliant in the past." ([6] at 420). During a clinic visit approximately four months after Plaintiff's stay at the South Mississippi State Hospital, a physician noted that Plaintiff had been placed on medications at the hospital and was stable since that time. ([6] at 435).

The new records, which were considered by the Appeals Council, but not the ALJ, consist of medical records from Plaintiff's hospitalizations on August 8, 2015; November 12, 2015; April 12, 2016; and May 10, 2016. ([6] at 98-138). These records are consistent with the records which were before the ALJ. Plaintiff was hospitalized from August 8, 2015, to August 14, 2015. Plaintiff's physician noted that he was not taking psychiatric medications and was "intoxicated due to substance abuse and did not have any primary psychiatric issues." ([6] at 133, 138). The physician recommended that Plaintiff seek treatment at a drug rehabilitation facility, but Plaintiff stated that he did not need drug treatment. ([6] at 133).

Plaintiff was hospitalized from November 12, 2015, to November 15, 2015, for depression and suicidal ideations. A physician noted that Plaintiff may have been malingering and appeared "to be exerting his symptoms, trying to be admitted." ([6] at 127-30). The physician stated that "considering his behavior as well as treatment failure, we should put him on 6-month no admission list at [the hospital]." ([6] at 128). Plaintiff was hospitalized again from April 12, 2016, to April 21, 2016, for depression and suicidal thoughts. ([6] at 106-21). A psychologist noted that Plaintiff was using crystal methamphetamine and marijuana but stated that she did not believe the episode of psychosis was drug induced. ([6] at 121). Plaintiff admitted using crystal methamphetamine, marijuana, and LSD. ([6] at 112). At discharge, Plaintiff was stable, and his physician noted that he "initially was very psychotic, but towards the end of his hospital stay, he was actually rather manipulative rather than psychotic." ([6] at 106). The next month, Plaintiff was hospitalized and once again was non-compliant with his medications. ([6] at 104).

The new records support the prognosis expressed by Plaintiff's physician at the South Mississippi State Hospital that Plaintiff has a fair outlook if he takes his medications, seeks outpatient treatment, and stops his drug abuse. ([6] at 420). The record before the ALJ contained sufficient evidence for the ALJ to make a determination, and Plaintiff has not demonstrated that the ALJ's failure to obtain additional medical records has prejudiced any substantial right. The record as a whole demonstrates that the Commissioner's decision is supported by substantial evidence.

*Issue 2: Whether the Residual Functional Capacity is Supported by Substantial Evidence*

On July 10, 2014, a Disability Determination Services ("DDS") physician Dr. Karen Hulett reviewed Plaintiff's records concerning his physical abilities and determined that he could

9

perform less than a full range of light work. ([6] at 146-47). On August 19, 2014, another DDS physician, Dr. Carol Kossman, affirmed Dr. Hulett's determination. ([6] at 150-56). Based on these findings, it was determined, at the agency level, that Plaintiff was not disabled. ([6] at 148, 155).

The ALJ considered the opinions of the DDS physicians and found that the opinions should receive "little weight" because Plaintiff's "records since his amended alleged onset date do not show more significant physical problems." ([6] at 25). Plaintiff argues that the ALJ erred by rejecting the opinions of the DDS physicians and relying on his own lay opinion.

Although the opinion of an agency physician is not binding, an ALJ may not ignore the opinion and must articulate the weight given to the opinion. *See* 20 C.F.R. § 404.1527; SSR 96-6p. An ALJ evaluates the findings of state agency medical consultants by using factors such as medical specialty and expertise with the social security rules, supporting evidence in the case record, supporting explanations provided by the physician or psychologist, and any other factor relevant to the weighing of the opinions. *Id*.

The ALJ did not entirely reject the opinions of the agency physician, but rather gave them "little weight." *See Holmes v. Berryhill*, 2018 WL 6574389, at *4 n.5 (S.D. Tex. Dec. 12, 2018). The ALJ explained that Plaintiff has very few treating records after August 8, 2015, the new alleged disability onset date. The ALJ also discussed the medical records prior to the alleged disability onset date. ([6] at 24). In 2006, Plaintiff underwent an anterior fusion of the C5-C6 vertebra, and on May 21, 2010, an MRI showed satisfactory alignment at C5-C6, mild spondylosis at C3-C7, and a small central disc protrusion at C6-C7. ([6] at 360-61). On January 29, 2013, Plaintiff visited the Premier Choice Medical Clinic complaining of chronic neck pain and was prescribed pain medications. ([6] at 359). Plaintiff returned to this clinic on several

occasion until March of 2014. ([6] at 329-59).  During his visits, it was noted on multiple occasions that Plaintiff was able to work and function. ([6] at 335, 337, 339, 349, 353).  It was also noted that Plaintiff had "been irresponsible" with his medications. ([6] at 347).

On March 25, 2014, a doctor informed Plaintiff he would no longer receive treatment from that clinic because he was abusing his prescription drugs and injecting them intravenously. ([6] at 328-29).  Additionally, on June 10, 2014, Plaintiff's physician at Premier Choice Medical Clinic completed a disability report and opined that Plaintiff "does not meet criteria to qualify for disability." ([6] at 327).

The ALJ also noted that Plaintiff had extensive activities of daily living and was not taking pain medication, not even over the counter pain medication. ([6] at 25).  The ALJ noted that Plaintiff was able to perform household chores such as preparing meals, washing clothes, shopping, and washing dishes.  The ALJ noted the Plaintiff was able to go to the park with his children and enjoyed fishing, playing music, and walking. ([6] at 21, 25).

The record as a whole contains sufficient evidence supporting the ALJ's treatment of the agency physicians' opinions.  "What [Plaintiff] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine [Plaintiff's] capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).  The ALJ's treatment of the agency physician's opinions does not require reversal of the Commissioner's decision or remand of this action.

### Issue 3: Whether the ALJ Erred in the Analysis Required by SSR 16-3p

Social Security Ruling 16-3p provides guidance regarding how the Social Secuirty Administration evaluates "statements regarding the intensity, persistence, and limiting effect of symptoms in disability claims."  Plaintiff argues that the ALJ erred in his SSR 16-3p analysis by

failing to properly consider his noncompliance with medical treatment.  According to Plaintiff, the ALJ should have considered that his lack of financial resources and his bipolar disorder prevented him from seeking and complying with medical treatment.  SSR 16-3p provides that a claimant's failure to seek or comply with medical treatment is relevant to evaluating his alleged symptoms.  An ALJ, however, is required to review the possible reasons a claimant may not seek or comply with medical treatment.

> The ALJ made the following determination regarding Plaintiff's symptoms:
>
> The claimant testified that he could not afford much medical care or mental health treatment, due to lack of funds and insurance, as well as homelessness.  The undersigned considered the claimant's explanations for failure to follow treatment in accordance with SSR 16-3p.  However, he also considered the multiple emergency room visits, which appear to result from continuing non-compliance with treatment.  The claimant has found lower cost clinics.  He also did not allege that he could not afford his mental health prescriptions.

([6] at 25).  Additionally, the ALJ noted that Plaintiff's possible personality disorder might complicate his treatment.  The ALJ, however, noted that Plaintiff's symptoms were stable when he took his medications. ([6] at 24).

The ALJ has discretion when considering whether to use Plaintiff's noncompliance with medical treatment in making a determination concerning Plaintiff's symptoms as long as the ALJ's conclusions are supported by substantial evidence. *See Rodriguez v. Berryhill*, 2019 WL 403860, at *11 (S.D. Tex. Jan. 3, 2019); *Busby v. Colvin*, 2017 WL 818582, at *10 (S.D. Tex. Feb. 10, 2017).  The record contains substantial evidence supporting the ALJ's determination.  The record demonstrates that Plaintiff's treating physicians believed he had a fair outlook if he takes his medications, seeks outpatient treatment, and stops his drug abuse. ([6] at 420).  Plaintiff was stable when he complied with medical treatment, and the record does not demonstrate his physicians believed Plaintiff was financially or medically unable to comply with their orders.

12

([6] at 127-30, 133, 435). The records show that any lack of treatment was the result of Plaintiff's choices.[6] The ALJ gave sufficient reasons for his findings, and the ALJ's decision is supported by substantial evidence.

Plaintiff also complains that the ALJ relied on Plaintiff's activities which were reported more than a year prior to the alleged onset date and were contradicted by the testimony of Plaintiff and his friend, Jessica Deuet. Plaintiff points out that their testimony shows he "experiences auditory and visual hallucinations, sleep disturbances with him not sleeping for days at a time, plus difficulty concentrating, completing task, remembering, and interacting with people." ([10] at 30). In determining a claimant's RFC, an ALJ considers descriptions and observations of the claimant's limitations provided by the claimant, family, neighbors, friends, or other persons. *See* 20 C.F.R. § 404.1545(a). Social Security regulations prescribe a two-step process for evaluating subjective complaints of pain and other symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p. Under the first step, the ALJ considers whether there is a medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms. If the claimant meets the burden of showing an impairment that could reasonably be expected to produce the alleged symptoms, the ALJ moves on to the second step. At the second step, the ALJ determines the "intensity, persistence, or limiting effect" of the alleged symptoms. The second step requires the ALJ to consider the record as a whole, including both objective and subjective evidence.

The ALJ considered SSR 16-3p and the testimony of Plaintiff and Jessica Deuet. He made the following determination regarding the subjective complaints:

---

[6] For example, on August 14, 2015, Plaintiff's physician recommended that Plaintiff seek treatment at a drug rehabilitation facility, but Plaintiff stated that he did not need drug treatment. ([6] at 133).

13

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the above-alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

([6] at 24).

As previously discussed, the ALJ considered the medical evidence. The ALJ also noted that Plaintiff reported that he could perform "extensive activities of daily living." ([6] at 25). Plaintiff complains that these activities were reported more than a year prior to the alleged onset date, August 8, 2015.[7] Plaintiff, however, has failed to demonstrate that the ALJ should not have relied on Plaintiff's reported abilities. Plaintiff has not shown that his abilities have declined since he reported his activities. In one of his latest medical records, dated October 7, 2016, a physician noted that Plaintiff had been placed on medications approximately four months earlier and had been stable since that time. ([6] at 435).

The ALJ's findings regarding Plaintiff's symptoms is supported by substantial evidence. "Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). The ALJ found that the medical evidence and Plaintiff's report of his activities were more persuasive than Plaintiff's subjective complaints—precisely the kind of determination an ALJ is best positioned to make.

---

[7] As previously mentioned, during the hearing before the ALJ, Plaintiff confirmed that he had been "working to a large extent" after December 21, 2012, the disability onset date which was initially alleged. Thus, after the hearing, Plaintiff amended his alleged disability onset date to August 8, 2015. ([6] at 56-57, 299).

***Issue 4: Whether the ALJ Improperly Made an Inference that Stabilization Correlates to the Ability to Work on a Sustained Basis***

Plaintiff argues that the ALJ improperly considered statements made about the stabilization of Plaintiff's symptoms as evidence that he can work on a sustained basis. Plaintiff cites to the ALJ's treatment of a letter submitted by a social worker on April 21, 2016 and a medical record from October 7, 2016. The April 21, 2016, letter was submitted after Plaintiff asked the social worker to write it "in support of him obtaining a disability ruling." ([6] at 365). Although the social worker stated she leaves "it to your discretion to determine if he qualifies for a disability ruling," she opined that Plaintiff "would benefit from a ruling that provided him with insurance to obtain his medicines." *Id*. The ALJ gave this opinion little weight for multiple reasons. One thing noted by the ALJ was that the social worker stated Plaintiff's medication "stabilizes his condition." The ALJ found that this statement by the social worker "supports that his condition is not disabling when he is compliant with treatment." ([6] at 26). The ALJ also considered a medical record from October 7, 2016. This medical record contains a note from Plaintiff's physician stating that Plaintiff had been placed on medications approximately four months earlier and had been stable since that time. ([6] at 435).

Plaintiff argues it may be error to infer that stabilization supports the ability to work. "A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time." *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986). However, "[i]f an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability." *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988).

15

The record does not demonstrate that Plaintiff is unable to work on a sustained basis even when he is compliant with his medical treatment. *See Naney v. Shalala*, 1994 WL 247207, at *2 (E.D. La. June 2, 1994). Plaintiff's treating physicians believed that he had a fair outlook if he takes his medications, seeks outpatient treatment, and stops his drug abuse. ([6] at 420). The record shows that medical treatment stabilized Plaintiff's symptoms and that the stability could be maintained. ([6] at 106, 127-30, 133, 420, 435). Additionally, Plaintiff's personal history reveals that he is capable of maintaining employment for extended periods of time. Plaintiff has a significant work history and performed work rising to the level of substantial gainful activity after the disability onset date initially alleged and performed work which did not rise to that level after the amended disability onset date. ([6] at 20, 56-57, 235-40). The Commissioner's decision is supported by substantial evidence.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and that no reversible error of law was committed by the ALJ. Accordingly, the undersigned recommends that the Commissioner's final decision be AFFIRMED and that this action be DISMISSED.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party,

except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This 30th day of May, 2019.

s/ Michael T. Parker<br>United States Magistrate Judge